**TA LEGAL GROUP PLLC**
Taimur Alamgir, Esq.
205 E Main St, Suite 3-2
Huntington, NY 11743
(914) 552-2669
tim@talegalgroup.com
*Attorneys For Plaintiff Desiree Rahman, and Class Members*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DESIREE RAHMAN, *on behalf of herself, and the Class*,

Plaintiff,

- -against -

VILLAGE CARE SENIOR SERVICES CORP. and VILLAGE CARE OF NEW YORK, INC.,

Defendants,

**Case No.:**

**FIRST AMENDED CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff, Desiree Rahman ("Plaintiff" or "Ms. Rahman"), by and through her undersigned counsel, TA Legal Group PLLC, hereby files this First Amended Class Action Complaint ("Complaint") against Defendants, Village Care Senior Services Corp. and Village Care of New York, Inc. (collectively, "Defendants"), and states as follows:

## CLAIMS

1. Plaintiff alleges, pursuant to the WARN Act, 29 U.S.C. §§ 2101, et seq., and the New York WARN Act, Art. 25-A, §§ 860 et seq., and applicable regulations, and Fed R. Civ. P.

23, that she and Class Members are entitled to recover damages from Defendants as a result of Defendants' failure to timely provide Plaintiffs and Class Members with required written notice.

2. Plaintiff further alleges that she is entitled to attorney's fees and costs and reserves the right to seek additional damages available under applicable law.

## JURISDICTION, VENUE, AND STATUTORY PREREQUISITES

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C.§ 1367.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

5. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## THE PARTIES

6. Ms. Rahman is a resident of New York County, New York.

7. Defendants Village Care Senior Services Corp. and Village Care of New York, Inc. are both corporations operating in the state of New York.

8. Corporate Defendants Village Care Senior Services Corp. and Village Care of New York, Inc. comprise a "single employer" or "single integrated enterprise" for purposes of all causes of action asserted, including the WARN Act and New York WARN Act.

9. Collectively, Corporate Defendants comprise a "single employer" for purposes of all causes of action asserted, including federal and New York WARN Acts. Defendants have

interrelated operations, a shared business purpose of providing healthcare services to individuals with chronic health issues, human resources and control of labor relations, common senior management, and common ownership and financial control.

10. Defendants employ over 100 employees and are thus subject to WARN act jurisdiction.

## RULE 23 CLASS ACTION ALLEGATIONS

11. Plaintiff seeks relief under Fed. R. Civ. P. 23 on behalf of Class Members, including all employees terminated by Defendants on or about April 1, 2025 in connection with mass layoff as to the 112 Charles St. location. Within the Class is a Subclass of employees terminated in connection with the plant closing as to the ArchCare MLTC Plan Operating Unit. Plaintiff is a member of the Class and the Subclass.

12. Class Members are readily ascertainable. The number and identity of the Class are determinable from the records of Defendants. Class Members are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

13. The proposed Class are both so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there are more than forty (40) members of the Class and more than forty (40) members of the Subclass.

14. Defendants' enterprise-wide policies and practices affected all Class Members

similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures. The foregoing also applies to the Subclass.

15. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

16. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

17. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

18. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members

of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

19. There are questions of law and fact common to the Class which predominate, including:

a. Whether Defendants failed to provide Plaintiff and Class Members notice as required under the federal WARN act.

b. Whether Defendants failed to provide Plaintiff and Subclass Members notice as required under the federal WARN act.

c. Whether Defendants failed to provide Plaintiff and Class Members notice as required under the New York WARN act.

d. Whether Defendants failed to provide Plaintiff and Subclass Members notice as required under the New York WARN act.

## STATEMENT OF FACTS

20. Defendants are a provider of community based health services including provision of healthcare coverage, assisted living, and other related services.

21. Plaintiff is a 51-year-old woman who, at all relevant times, was employed by Defendants as an Enrollment Specialist (a non-exempt position), beginning in approximately June 2024.

22. Plaintiff's employment began with ArchCare. In June 2024, ArchCare's Community Life Managed Long Term Care Plan (the "Plan") was acquired by Defendants.

23. Defendants issued a press release regarding the acquisition stating that "VillageCareMAX has retained the ArchCare Community Life Plan staff to help ensure a seamless transition and continuity of care for members."

24. Following the acquisition of ArchCare's MLTC Plan by Defendants, Plaintiff became an employee of Defendants, but continued her employment in the same or substantially similar role, under the direction and control of Defendants.

25. For the duration of Plaintiff's employment by Defendants, Plaintiff and other ex-ArchCare members of the Plan staff who were transitioned to Defendants following the acquisition were part of a distinct operating unit ("ArchCare MLTC Operating Unit"), devoted to servicing Plan participants who were transitioned from ArchCare.

26. Plaintiff and other members of the ArchCare MLTC Operating Unit were supervised by management specific to the Operating Unit who, like Plaintiff, had come from ArchCare.

27. 112 Charles St. was the location at which Plaintiff and other employees of Defendants who worked with any of Defendants' health plans (including the ArchCare MLTC Operating Unit), were based. Remote employees who worked with any of Defendants' health plans (including the ArchCare MLTC Operating Unit) including Plaintiff were based at this location, from which their work was assigned, and to which they reported

28. On approximately April 1, 2025, Plaintiff received a notification for a Microsoft Teams at 9:45 a.m. During this meeting, which was attended by more than 100 employees,

Plaintiff and the other attendees were informed orally by CEO Emma De Vito that they were being terminated from employment effective immediately.

29. The April 1, 2025 termination event constituted a mass layoff of around 150 employees involving in Defendants' health plans business (in excess of 33% of the approximately 430 employees based at the Charles St. location overall. Employees terminated as a result of the mass layoff constitute the Class.

30. Remote employees laid off as part of the April 1, 2025 termination event were required by Defendants to drop off their electronic devices at the Charles St. location, confirming that they were based at said location (and not based at headquarters at 120 Broadway).

31. As part of the April 1, 2025 termination event, Defendants shut down the ArchCare MLTC Operating Unit. More than 50 full-time employees, including Plaintiff, were laid off in connection with the closure of this distinct operating unit. Employees subject to this plant closing constitute the Subclass.

32. The management team specific to the ArchCare MLTC Operating Unit was also terminated in connection with the plant closing of this operating unit.

33. Plaintiff did not receive advance written notice of her termination as required by the federal and New York WARN Acts. Similarly, Class Members were not provided advance written notice of termination.

34. Plaintiff and Class Members (including Subclass Members) never received written notification of the mass layoff despite the requirements of the federal and New York WARN Acts. Plaintiff and Class Members (including Subclass Members) were never provided notice (written or otherwise), for federal and state WARN act purposes, providing required information regarding

the reason for the mass layoff, any indication of whether bumping rights exist, contact information for any company official to contact for further information, or any information regarding unemployment insurance or job training.

35. As a result of Defendants' non-compliance with the federal and New York WARN Acts, Plaintiff and Class Members (including Subclass Members) were deprived of statutory rights and protections guaranteed by federal and state law.

36. All conditions precedent to the institution of this action have been satisfied, waived, or excused.

37. Plaintiff retained TA Legal Group PLLC and agreed to pay the firm a reasonable fee.

## CAUSES OF ACTION

### I. Violation of the Federal Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101 et seq.

38. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

39. The federal WARN Act, codified at 29 U.S.C. § 2102, requires employers with 100 or more employees to give employees 60 calendar days' notice in advance of plant closings and mass layoffs.

40. Federal WARN Act notice requirements under 20 C.F.R. § 639.7(d) include:

a. A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;

b. The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;

c. An indication whether or not bumping rights exist; and

d. The name and telephone number of a company official to contact for further information.

41. For federal WARN Act purposes, a "plant closing" occurs within the meaning of WARN when a "permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown" leads to the loss of employment for at least 50 employees during a 30–day period. § 2101(a)(2).

42. For federal WARN Act purposes, a "mass layoff" occurs when, not as the result of a plant closing, a reduction in force "results in an employment loss at the single site of employment during any 30–day period for—[1] at least 33 percent of the employees (excluding any part-time employees), and at least 50 employees (excluding any part-time employees); or [2] at least 500 employees (excluding any part-time employees)."

43. Employer liability for federal WARN Act violations can include up to 60 days of pay and benefits, plus a civil penalty of $500 per day per violation.

44. Here, Defendants employ in excess of 100 employees and constitute an employer for purposes of the Federal WARN Act.

45. Defendants failed to provide Plaintiff and similarly situated employees in the Subclass with the required written notice prior to the ArchCare MLTC Operating Unit plant closing and mass layoff at Charles St. that occurred on or about April 1, 2025, in accordance with federal law.

46. Any excuse that Defendants may make based on financial hardship or business necessity for the layoff is invalid and pretextual.

47. As a result of Defendants' failure to comply with the WARN Act, Plaintiff and the Class and Subclass Members are entitled to recover back pay, benefits, and other damages as provided by law.

## II. Violation of the New York Worker Adjustment and Retraining Notification Act ("NY WARN Act"), N.Y. Lab. Law §§ 860 et seq.

48. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

49. The New York WARN Act is more stringent than the federal WARN Act. Under the New York WARN act, "[a]n employer who fails to give notice as required by [the Act] before ordering a mass layoff, relocation, or employment loss is liable to an employee entitled to receive notice who lost his or her employment." N.Y. LAB. LAW § 860-g. The New York WARN act requires Plaintiff to show that: (1) Defendant is an "employer," (2) Plaintiff is an "affected employee," (3) a "plant closing" or "mass layoff" occurred, and (4) Defendant failed to give ninety- days' notice.

50. Notice under the New York WARN Act must be written. It includes the aforesaid federal law requirements, plus "Information concerning unemployment insurance, job training, and re-employment services for which affected employees may be eligible," which must include certain specific language set forth at 12 N.Y.C.R.R. § 921-2.3(b).

51. For New York WARN Act purposes, "Plant closing" means the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units

within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any thirty-day period for twenty-five or more employees (other than part- time employees).

52. For New York WARN Act purposes, a mass layoff" means a reduction in force which( 1) is not the result of a plant closing; (2) results in an employment loss at a single site of employment during any thirty-day period for: (i) at least thirty-three percent of the employees (excluding part-time employees); (ii) at least twenty-five employees (excluding part-time employees); or(iii) at least two hundred fifty employees (excluding part-time employees).

53. Here, Defendants employ in excess of 250 employees and constitute an employer for purposes of state WARN acts.

54. Defendants failed to issue WARN Act notice to Plaintiff or Class Members in accordance with New York law.

55. Defendants violated the New York WARN Act because the reduction in force was a plant closing that affected at least 25 full-time employees or, alternatively, a mass layoff that affected at least 25 full-time New York employees, and at least 33% of Defendants' total full-time New York employees.

56. Defendants failed to provide Plaintiff and similarly situated employees with the required written notice prior to the plant closing as to the ArchCare MLTC Operating Unit and the mass layoff that occurred on or about April 1, 2025.

57. Any excuse that Defendants may make based on financial hardship or business necessity for the layoff is invalid and pretextual.

58. Plaintiff and Class Members (including Subclass Members) are entitled to recover damages (including back pay, reasonable attorney's fees, and civil penalties of $500 per day of continued non-compliance) based on Defendants' New York WARN Act violations.

59. As a result of Defendants' failure to comply with the NY WARN Act, Plaintiff and the NY WARN Class are entitled to recover back pay, benefits, and other damages as provided by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Desiree Rahman, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in her favor and against Defendants, and grant the following relief:

- Certification of a Rule 23 Class Action under the federal and New York WARN Acts.
- Appointment of Plaintiff as Class Representative.
- Award back pay, the value of lost benefits, and all other damages available under the federal WARN Act, 29 U.S.C. §§ 2101 et seq., and the New York WARN Act, N.Y. Lab. Law §§ 860 et seq., for each day of violation, to Plaintiff and all similarly situated employees;
- Issue appropriate injunctive and declaratory relief to prevent further violations of the FLSA, NYLL, WARN Acts
- Award reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action, as provided by the, WARN Acts, and other applicable law;
- Award pre-judgment and post-judgment interest as permitted by law;
- Grant such other and further relief as the Court may deem just, equitable, and proper.

Plaintiff reserves the right to amend the relief sought as additional facts and evidence are developed in this action.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: Huntington, NY
November 14, 2025

Respectfully Submitted,
**TA LEGAL GROUP PLLC**

By: ______________________________
Taimur Alamgir, Esq.
205 E Main Street, Suite 3-2
Huntington, NY 11743
Tel. (914) 552-2669
tim@talegalgroup.com